*671 OPINION.
Sternhagen :
We are to consider whether the foregoing facts combine into a situation where two corporations are affiliated so as to make the determination of their tax liability a single rather than a multiple problem. Clearly there is a commercial and economic unity in the enterprise. Probably for no other practical purpose would one consider the production of income by these two factories as a double function. Their owners and employees consider them a business unit, and the interest of each is the interest of all. The Byron Company was conceived in the necessities and inadequacy of the older' company, and was deliberately created as a branch and supplement to supply its patent need. If personnel and legal structure be disregarded the evidence leads unswervingly to the conclusion of a single united enterprise. Why the Byron Company was separately created does not appear, and we shall not speculate on its reason. For aught the evidence discloses its whole function could as well have been performed as an arm of the Hagerstown Company.
The Byron brothers are the dominating and guiding spirit of the business. They originated it and formed the Hagerstown Company, which they alone financed. They operated the business and so completely controlled it that no one else questioned their management. They determined the extent of outside stock ownership and *672 its tenure, and by unequivocal written agreements they forestalled any opposition through discontentment. At no time had they less than a voting majority in absolute ownership or, we are satisfied, less than to irresistible influence over the ivhole. The president expressed the situation by calling the employees’ stock ownership a plan of profit sharing. One needs only to read the written terms of the note, the by-laws, and the agreement, carefully drawn and fully comprehended by the stockholders, to see that the tiller is always in the firm grasp of the Byron family. Theirs is the last and controlling word, however' freely they may invite suggestion. The oarsman who at any moment may be cast overboard is no more free because he pulls an ardent stroke.
Does it matter that most of the employees’ stock was paid for so that title was freed from the pledge for the note? This was not ownership, for the power of free disposition, that sine qua non of ownership, was wholly wanting. The stockholder could only vote and share the profit. Indeed, his vote was futile unless in accord with the Byrons. And his ownership carried no responsibility, for in case of loss he had only to quit by selling his stock to the Byrons under his contract.
Are we, in applying this statute, to look at the tabulated statement of stock ownership and, because it there appears that several persons are stockholders of one or the other legal entity and not of both, say that this alone is determinative ? We have had occasion in other appeals on other questions to say, and we can not too often repeat, that all facts must be considered. These problems are not flat mathematical or legalistic puzzles; they are vital, and must be examined in three dimensions with the light of reality. No solution otherwise arrived at could long survive. Here the table of percentages changes its color entirely in the light of the circumstances under which the percentage distribution exists, and, instead of indicating a substantial independent minority, indicates that “ substantially all the stock of two * * * corporations is owned or controlled by the same interests.”